Good morning, Your Honors. May it please the Court. David Gardner for Petitioner Ravinder Singh. I would like to reserve a couple of minutes for rebuttal. The Petitioner's case is for relief under the Convention Against Torture primarily, and also to reopen his case for asylum. Relief under the Convention Against Torture is a mandatory remedy. The Petitioner submits to the Court, but for the time bar on motions to reopen, he has established a prima facie case under the Convention Against Torture. The issue on changed country conditions relates primarily to the nature of the violence perpetrated by the Indian police and security forces. The Petitioner's expert reports and country condition reports demonstrate that during the period 2005 to 2008, there was a sea change in the way that India and its security apparatus operated. Just as in the United States, 9-11 was a sea change in the terms of the way we look at the world and our security, the impact has up until today. In India, this started in 2005 with a series of bombings, culminating in an internationally publicized incident in 2008 with the bombings in Mumbai, which were elevated not quite to 9-11, but had a major impact in India. In the 1996 country condition reports, which were presented in the first hearing, the State Department indicates that the nature of police activities, in particular with respect to Sikhs, were primarily related to domestic incidents. There were several thousand asylum claims submitted during that time, and they related to claims by Sikhs because of the Indian state's actions to prevent succession in the Punjab. In this case, the Petitioner is arguing that in 2005, security became internationalized, the apparatus for enforcing security changed with computer technology so that the airports have a watch list which was now national and international. Someone in the position of the Petitioner who had already complained of being beaten by the police originally, he was found not to be credible, and I'd like to address that also, would be automatically earmarked as a terrorist. He had already been detained. There would be communication through the national computer system, and it's highly likely and highly probable that he would be subject to detention. You know, this is all very interesting, but I didn't quite get the flavor of your oral statements here as I read your brief and the motion before the BIA. And I don't really see how what you presented to the BIA as a basis for your motion to reopen being that much qualitatively different than the evidence that was before the IJ at the original proceeding and before the BIA on appeal in the original proceeding. And not only that, he was found not credible by the IJ. I don't know how this evidence goes to restore his credibility in any way. Your Honor, if I may address the credibility issue, at page 11 there's a psychologist report. This case came to me, and I instructed a psychologist because the Petitioner was having a nervous breakdown in detention. Specifically, the psychologist indicates that close confinement in the detention center in Santa Ana triggered memories of prior torture. Those conditions, which are very much detailed, could not have been reproduced other than by that particular subsequent detention. And there's no basis for contesting the report of the psychologist. That evidence was not available in the prior proceedings. With respect to country conditions... Well, he could have had a psychologist report it through prior proceeding. He could have had a psychologist report, but what I'm arguing is that the conditions which triggered this were the close confinement, and that could not have been reproduced at the prior hearing, which would lend itself to, I believe, a credibility finding should the proceedings be reopened. The Petitioner's arguing that it's the quality and the materiality of the change is the elevation of the perceived terrorist from local Sikhs in a Punjabi context to international terrorism. And therefore, the original grounds for whatever was going on with the Petitioner and his family, he testified that his grandfather was killed by police and also his brother and sister. Regardless, with respect to the Convention Against Torture, once he's identified, he has a high probability of being subject to torture in the future. And it's the nature of the security apparatus that the Petitioner is arguing and the motivation for the attacks which has changed. The other issue that is documented in the Human Rights Report is the level of impunity. Whilst India has human rights abuses, it has a system to address them. The reports clearly indicate that the government has encouraged and the police feel obligated to round up the suspects, beat them first, and then find out the reason after. And that is clearly condoned and acquiesced to by the Indian government. Did you wish to save your time? You have three minutes left for rebuttal. May it please the Court, Nicholas Harling for the respondent. In this case, the Board acted within its discretion to deny Mr. Singh's untimely motion to reopen when he failed to present evidence of changed country conditions that were qualitatively different from the conditions he presented at his prior agency case. His evidence of changed country conditions essentially states that the police in India are still looking for him and that if they catch him, he is likely to suffer the same type of abuse, including torture, that he presented at his prior hearing. He argues that after the 2008 terrorist bombing, that the laws in India changed to allow for wider powers of detention. However, the leaf affidavit that he presents in support of his claims indicates that from 1985 to 2008, Indian law carried, quote, very broad definitions of torture and terrorism, and also that during that time, the government's response to terrorism remained, quote, substantially the same. Additionally, his family affidavits that he presented were insufficient to establish changed country conditions. His father's affidavit stated that the police continue to look for Singh, which does not evidence a change, and also states that Singh's own father has continued to be arrested, as he has been, for more than a decade. Also, the family's affidavits do nothing to rehabilitate the prior adverse credibility determination, which was affirmed by this court. As the board noted, there were contradictions in the number of arrests that Singh experienced, the date of his U.S. arrival, and when the police first targeted him for arrest. Do you agree that if there's evidence of changed country circumstances, then generally, I mean, generally one does have a right to come in, even if individually you've been determined not to face torture? I'm not sure I understand your question. It's not very well put. If there is a change of material circumstance in the country of origin which subjects an individual applicant to increased risk of torture, is that alone sufficient to reopen? Normally, it would be, Your Honor, if it were a qualitative change. However, the laws in the leaf that are referenced in the leaf affidavit do not evidence a qualitative change. Your point here is that there is no evidence of qualitative change, and in any event, the credibility determination probably preempts anything else. That was my next point, Your Honor, that based on the prior adverse credibility claim, because his prior case was based on these same facts, these same fears, based on his alleged involvement with Sikh militarism and the alleged belief by the Indian government that he was a Sikh militant, nothing has changed. And so even if there had been a qualitative change, it's not likely that it would have mattered, because he wasn't placed in that group that was affected. Setting aside the credibility issues, I think Petitioner has a tough case to establish material change country conditions, because a lot of the issues that he's complaining about were described in the materials before the BIA previously, in particular the 1999 country conditions report. But the one thing that he does argue is different is that given the emphasis, I guess, in the post-9-11 world, and now he's been placed on the terrorist watch list, which arguably then kind of enhances the ability to target him in particular. Do those facts that are asserted, that are arguably different as to him, setting aside all the credibility issues, does that make a difference in terms of your analysis of change country conditions? Your Honor, perhaps I missed it, but in reviewing Petitioner's brief, I didn't recognize that he was stressing a difference in the domestic versus an international take on the government's approach. And the assertion that he's now placed on the terrorist watch list is something that the BIA specifically addressed, so I wanted to get your take on whether that makes a difference in the analysis. I know in his prior case, he stated that because there were lists at the airport, that if he was removed, he would likely go into custody. And I know in the government's brief, we stated that there's evidence in the record that those types of lists existed as early as, I believe, 1993. So I'm not really sure that that is a different – while the context, domestic versus international, might be different, even if it was raised earlier, I'm not sure that it's a qualitative difference in the effect that it's likely to have on him as far as his chances of being detained by the government. Additionally, I would just like to state that Petitioner's citation to Camalthus is generally without merit because it's factually distinguishable from the facts of his case. In Camalthus, that case dealt with the Board's denial of relief for failure to establish prima facie eligibility for the relief. In this case, the Board never reached a prima facie determination because the Board stated that he did not establish an exception to the timeliness bar in promotions to reopen. Moreover, in Camalthus, the Court faulted the Board for not considering the country conditions in the record. In this case, the Board clearly considered the country conditions. And so for that reason, I don't believe that the citation to Camalthus has any substantive effect on his arguments. On the credibility determination issue, how do you respond to what was said in oral argument that the psychologist's report makes a difference? I'm not sure that it does, Your Honor. It seems he could have had a psychological evaluation done the first time around. He says that it was his detention that brought that on. However, if he really was suffering the psychological effects of his prior alleged mistreatment in India, I'm not sure why he wasn't able to establish that either through a psychological evaluation or some other way. Plus, even if it were persuasive, the fact remains that the Board cited numerous other instances where his evidence that he presented with the motion to reopen was contradictory. So at best, I would argue that it cancels that out. So the I.J. should have admitted the evidence. I mean, if it had been presented, the I.J. should have admitted the psychologist's report. I mean, if it had then been presented. I mean, I, as a district judge, I just find it a little difficult to entertain the admissibility of psychologist's reports in making credibility determinations. I'm not aware that the I.J. No, no, if it had been presented, should the I.J. have done it. I can't really speak to that, Your Honor, since it wasn't presented. I'm sorry. And finally, on his due process claim, that too is without merit because the Board's decision clearly reflects that it considered the evidence submitted and it reviewed those arguments in making its determination. Okay. There's nothing further. The government would ask that because the Board did not act arbitrarily, irrationally, or contrary to law, the court should defer to the Board's exercise of discretion and affirm its denial of things on time when the motion was reopened. Thank you. Thank you, counsel. You had a few minutes for rebuttal. Thank you. Counsel. Firstly, I would like to respond with respect to the credibility issue. For relief under the Convention Against Torture, a prior adverse credibility claim is not fatal unless it goes to the heart of a claim. And the petitioner here is arguing that it does not because of the changed country conditions. And I don't want to use my time on that issue, but credibility is one of the issues. Even assuming that the petitioner at his first hearing could have done a better job with a psychologist, you're looking at an individual who has been diagnosed with post-traumatic stress syndrome and may not have been able to do the best job the first time around. However, what's at stake here is the actions of the country in question. I'd like to draw the court's attention to transcript 274, an extract of an executive summary from a report in 2005 entitled Punjab Police Fabricating Terrorism Through Illegal Detention and Torture. And it states, Thus, the majority of detainees whose experiences are discussed in this report remain in the custody of Indian security forces and continue to be at risk of custodial abuse. By misinforming the public about threats to national security, Indian security forces have so far successfully masked an escalation in human rights violations. Your Honor, the issue is material change. An escalation is material. And I really don't believe the role of the court at this level is to determine how far those violations have escalated. There is substantial evidence of bad conduct by security, which is condoned and acquiesced and covered up by a nation state. And whatever failings the petition may have had in his prior proceedings, the evidence in this case indicates that he is a terrified individual who has been traumatized, is going back to a country which, when he arrives, is highly likely to detain him and put him into a system where he is likely to be tortured. Okay. Thank you, counsel. The matter is submitted.
judges: Motz, Paez, Nguyen